UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

NIGHT BOX
FILED
AUG 2 0 1997

CARLOS JUENKE
CLERK, USDC / SDFL / MIA

---------------------------------------------x
STEVEN J. GUTTER, on behalf
of himself and all others similarly
situated,

           Plaintiff,

   -against-

E.I. DUPONT DE NEMOURS
AND COMPANY,
and EDGAR J. WOOLARD, JR.

           Defendants.
---------------------------------------------x

CASE NO. 95-2152-CIV-GRAHAM

**PLAINTIFF'S REPLY BRIEF IN FURTHER SUPPORT OF HIS
MOTION TO FILE AN AMENDED AND SUPPLEMENTAL COMPLAINT**

Plaintiff, Steven J. Gutter, files this reply brief in further support of Plaintiff's Motion To File An Amended And Supplemental Complaint.

## I. INTRODUCTION

Dupont contends that the allegations in the Amended and Supplemental Complaint regarding secret Benlate tests that were conducted in Costa Rica in 1992 (first publicly disclosed in April 1996) create an "entirely new claim" that is unrelated to the claims in the initial complaint and is time-barred. This contention is specious.

**As an initial matter, it should be noted that Dupont's argument is, in reality, a motion to dismiss the purportedly "new" claim on statute of limitations grounds. Motions to dismiss were not included in Judge Graham's April 17, 1996 Order of Reference and, thus, Dupont's argument is technically beyond the scope of that Reference. Since Dupont has informed Plaintiff that notwithstanding its objection it is reserving its right to move to dismiss the new complaint, allowing the amendment will not prejudice Dupont since it can properly raise its statute of limitation argument in a motion to dismiss. Allowing Dupont to raise its argument at this time will simply allow Dupont to have two bites at the same apple.**

This securities fraud class action alleges that Defendants deceived investors about Dupont's potential liability in hundreds of multi-million dollar law suits regarding Dupont's agricultural product, Benlate. Most notably, Defendants repeatedly told investors that there was no evidence to support the Benlate plaintiffs' claims, even though as they were making such statements Defendants knew of various types of adverse evidence that they were fraudulently concealing from Benlate plaintiffs around the country and the public. In addition, during the Class Period Defendants touted a series of positive trial verdicts and inexpensive settlements as an exoneration of the Benlate product and a confirmation of Dupont's innocence without disclosing that Dupont's litigation "victories" were fraudulently obtained and, thus, did not accurately reflect Dupont's innocence or the true extent of its liability exposure.

1

Although Plaintiff knew when he filed his initial complaint that Dupont's scheme was a widespread one which involved concealing the Alta test evidence in numerous Benlate suits, Plaintiff was unaware in September 1995 of the Costa Rican tests. Approximately seven months later, Plaintiff learned of the secret 1992 Costa Rican tests, which were yet another reason why Dupont's statements that the scientific evidence absolutely supported its litigation position were false. Within a few months after learning of the Costa Rican tests, Plaintiff began to raise the Costa Rican tests in various motions and discovery requests, including, most notably, a crime-fraud motion which pointed to the concealment of the Costa Rican tests and the Davis Tree sanctions as more evidence of Dupont's fraudulent conduct.

Even though Defendants: (a) have known for the last nine months that the concealment of the Costa Rican tests is an issue in this case, and (b) have already started producing documents regarding the issue several months ago, Dupont now asserts that it has purportedly been prejudiced by Plaintiff's failure to formally amend his complaint sooner regarding the Costa Rican testing issues.

Defendants' brief focuses on two arguments. First, Dupont argues that the Costa Rican test allegations create a new claim which does not relate back to the claim in the initial complaint, and is, thus, time-barred. This argument is preposterous on its face. Second, Dupont argues that it has purportedly been prejudiced by Plaintiff's failure to amend his complaint prior to the recently-submitted Amended and Supplemental Complaint. This disingenuous argument also fails in light of various significant facts discussed below which belie Dupont's feigned protests of prejudice.

Dupont's cries of delay and prejudice are nothing more than an on-going effort to unfairly restrict the scope of Plaintiff's case and avoid identifying incriminating documents regarding the Costa Rican, which Plaintiff may be able to obtain in a crime-fraud motion.

## II. FACTUAL BACKGROUND

As of September 29, 1995 (when the initial complaint was filed), the only concealed evidence that Plaintiff's counsel knew of were the Alta lab tests. Approximately seven months later, on April 24,

2

1996, Plaintiff learned of the Costa Rican tests from a <u>Wall Street Journal</u> article.

### Plaintiff's Discovery Efforts

On August 6, 1996, Plaintiffs and Defendants jointly requested to stay discovery and all proceedings in this action while the parties pursued settlement negotiations. The discovery stay, which was ordered on August 21, 1996, ended on October 21, 1996. Shortly thereafter, on November 8, 1996, Plaintiff served a Second Set of Document Requests To Defendants (Ex. A hereto), which specifically requested documents regarding the Costa Rican tests. Plaintiff's Second Document Request 3 sought all documents related to, regarding, addressing, discussing or directly or indirectly referring to:

> (a) any tests, experiments, studies, observations and/or activities conducted, performed, done or made in Costa Rica by DUPONT regarding or relating to benomyl or any BENLATE PRODUCT;
>
> (b) any tests, experiments, studies, observations and/or activities conducted, performed, done or made in Costa Rica by DUPONT regarding or relating to any impact, affect or effect of benomyl or any BENLATE PRODUCT on plants;
>
> (c) the application or treatment of any plant(s) in Costa Rica with benomyl and/or any BENLATE PRODUCT by DUPONT;
>
> (d) any activities in Costa Rica which were addressed, discussed or referred to during, or in connection with, the June 21, 1996 hearing in the action entitled <u>Davis Tree Farms, Inc., a Florida Corporation; Davis Tree Farms North, Inc., a Florida Corporation v. E.I. Du Pont De Nemours & Company, et. al.</u>, Circuit Court of the Eleventh Judicial Circuit In and for Dade County, Florida, General Jurisdiction Division, Case No. 92-20006, and/or any briefs, motions, or court orders or opinions that relate to the June 21, 1996 hearing.

In addition, because Dupont had the dying plants from the Costa Rican tests destroyed before they could be photographed or disclosed to Benlate plaintiffs, Plaintiff's Second Requests 4 and 5 sought, respectively, documents regarding the destruction of information created in connection with Benlate testing and documents regarding the destruction of any plants that were treated by Dupont with Benlate.

Furthermore, Plaintiff continued to seek discovery of the Costa Rican test issues by: (a) serving <u>subpoenas duces tecum</u> on the <u>Davis Tree</u> Plaintiff's attorneys on December 13, 1996 (Ex. B); (b) filing a motion on January 21, 1997 to intervene in the <u>Davis Tree</u> action in order to unseal various pleadings

3

and documents (Ex. C); and (c) requesting documents regarding the Costa Rican tests in <u>subpoenas duces tecum</u> to two of Dupont's trial counsel in the underlying Benlate actions (Ex. D).

Although, Dupont initially objected to Plaintiff's documents requests and the motion to intervene in the <u>Davis Tree</u> action, Dupont has: (a) identified to Plaintiff for copying purposes which documents in the Delaware document depository relate to the Costa Rican tests (b) agreed in a March 5, 1997 hearing with Special Master Klein to produce various sealed documents from the <u>Davis Tree</u> action, which Dupont has done and (c) agreed in a stipulated order entered by Special Master Klein on August 18, 1997 (Ex. E ) to produce all documents generated in connection with the 42 cases chosen by Plaintiff and/or at the corporate level, which are responsive to Plaintiff's Second Document Requests 2 through 6 (including the Costa Rican documents sought in requests 3 through 5 discussed above). Thus, Dupont has implicitly conceded the relevance of the Costa Rican testing issue to this case by agreeing to produce -- and actually producing -- documents regarding the subject.

## Plaintiff's Counsel Informed Dupont Of Plaintiff's Theory Regarding The Costa Rican Test

On November 26, 1996, Plaintiff filed their reply brief in further support of a motion to compel, which raised, <u>inter alia</u>, a crime-fraud privilege-exception argument. In that brief, Plaintiff specifically pointed to Dupont's concealment of the Costa Rican tests and the <u>Davis Tree</u> sanctions opinion as further evidence of Dupont's fraudulent scheme, stating, <u>inter alia</u>:

> Dupont has improperly tried to limit discovery to solely the <u>Bush Ranch</u> and <u>Kawamata</u> suits on the erroneous grounds that those were the only instances of Dupont's misconduct alleged by Plaintiff. Contrary to Dupont's suggestion, the Complaint alleges a wide-spread <u>pattern</u> of fraudulent conduct by Dupont in <u>several</u> courts around the country. Cpt. ¶¶10, 13, 69, 83, 93, 110-112. **While Plaintiff did not know of Dupont's misconduct in the <u>Davis Tree</u> and <u>Native Hammock</u> actions when this suit was filed, the wrongdoing there is of the same character as the misconduct in the <u>Bush Ranch</u> action and further evidences that Dupont lied to the public when it claimed that there was no evidence to support the Benlate suits and that its litigation "victories" proved its innocence.**

\*   \*   \*

4

> Contrary to Dupont's assertion, the various sanctions did not stem solely from Dupont's conduct in <u>Bush Ranch</u>. Each court penalized Dupont because of its misconduct in those forums. Indeed, the <u>Kawamata</u> court sanctioned Dupont over 25 times before the <u>Bush Ranch</u> court's August 1995 sanctions. Likewise, the sanctions are not based solely on the Alta documents. The sanctions involve three different types of concealed evidence: (a) the Alta soil tests at issue in the <u>Bush Ranch</u>, and <u>Kawamata</u> cases; (b) the Belle plant wipe-samples at issue in the <u>Ritter-Whitworth</u> case, and (c) **the Costa Rican field test documents at issue in the <u>Davis Tree</u> sanctions**.

Plaintiff's Reply Brief In Further Support of His Motion To Compel, at 1-2 (emphasis added).

Furthermore, Plaintiff's counsel expressly raised the <u>Davis Tree</u> sanctions opinion and the Costa Rican issue before this Court during a December 11, 1996 hearing on Plaintiff's motion to compel. The transcript from that hearing (Ex. F, hereto), reflects that Plaintiff repeatedly referred to the <u>Davis Tree</u> sanctions and Dupont's concealment of the Costa Rican tests as evidence of an intentional pattern of misconduct. Transcript of December 11, 1996 hearing at 5, 6, 8, 11, 12, 24, 25, 50-51. Moreover, during that hearing Dupont's attorneys also addressed the Costa Rican issue and the <u>Davis Tree</u> sanctions opinion, which evidences Dupont's recognition that Plaintiff was raising the issue. Transcript at 38-40.

Thus, contrary to Dupont's suggestion, Plaintiff has not sat on his hands regarding the Costa Rican issues. Rather: (a) Plaintiff has diligently sought discovery regarding the Costa Rican tests since November 1996; (b) Dupont has been clearly aware since November 1996 of Plaintiff's position regarding the relevance of the Costa Rican tests and <u>Davis Tree</u> sanctions opinion to Plaintiff's claims; and (c) Dupont has agreed to produce -- and already produced -- various documents regarding the issue.

### III. ARGUMENT

#### A. <u>Plaintiff's Costa Rican test allegations Are Not Time Barred</u>

As stated in Plaintiff's opening brief, even though Plaintiff filed this motion in an abundance of caution, Plaintiff still may amend the complaint as a matter of course pursuant to Fed.R.Civ.P. 15(a), which provides that "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served". Since, Dupont has not served an answered in this case, Plaintiff

5

is entitled to amend the initial complaint as a matter of right.[1] Driscoll v. Smith, Barney, Harris, Upham & Co., 815 F.2d 655, 659 (11th Cir. 1987); Caine v. Hardy, 905 F.2d 858, 863 (5th Cir. 1990). Adhering to Rule 15's dictate that "leave [to amend] shall be freely given when justice so requires", federal courts have repeatedly held the right to amend a pleading should be liberally allowed.[2]

Dupont argues that regardless of Plaintiff's right to amend, the portion of Plaintiff's amendment regarding the Costa Rican tests is futile because the "new" Costa Rican claim is time-barred. In addition to the fact that such an argument is best left for a motion to dismiss, Dupont's argument is substantively flawed for the following reasons.

First, Plaintiff has not offered the Costa Rican allegations as the basis for a new claim but rather as further support for the claims in the initial complaint. For example, Plaintiff does not seek extend the Class Period to assert claims for people who bought Dupont stock prior to June 19, 1993 or after January 27, 1995. Rather, Plaintiff included the Costa Rican allegations as an additional reason why the Dupont public statements cited in both the initial and new complaints were false and misleading.

---

[1] Dupont argues, inter alia, that Plaintiff does not have a right to amend the complaint for the Costa Rican allegations because such allegations can only be included with the Court's permission by a Rule 15(d) motion to supplement. A complaint is amended when the plaintiff adds facts that the plaintiff was unaware of at the time the initial complaint was filed. In contrast, a complaint is supplemented when the plaintiff adds facts regarding events that occurred after the initial complaint was filed. See Manning v. City of Auburn, 953 F.2d 1355, 1359-1360 (11th Cir. 1992); Frank v. U.S. West, Inc., 3 F.3d 1357, 1365 (10th Cir. 1993). Although they were only discovered after the initial complaint was filed, the facts regarding the Costa Rican tests and their concealment occurred before the initial complaint was filed. Thus, the new allegations in paragraphs 33, 34, 39, 40, 60, 69, 70, 77, 79, 86, all involve facts that existed at the time of the original pleading. Only paragraph 92 regarding the disclosure of the Costa Rican tests in April 1996 addresses an event that was subsequent to the complaint's filing. Thus, Dupont's supplementation argument is inapplicable to paragraphs 33, 34, 39, 40, 60, 69, 70, 77, 79, 86, which are properly added as an amendment by right.

[2] See Forbus v. Sears Roebuck & Co., 30 F.3d 1402, 1405 (11th Cir. 1994); Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1464 (5th Cir. 1995); Frey v. City of Herculeum, 44 F.3d 667, 672 (8th Cir. 1995); Figgie Int'l, Inc. v. Miller, 996 F.2d 1178, 1180-1181 (7th Cir. 1992); Quarantino v. Tiffany & Co., 71 F.3d 58, 66 (2d Cir. 1995).

As the Court observed in Schaffer v. The Timberland Co., 924 F.Supp. 1298, 1308-09 (D.N.H. 1996), a securities class action that is on all fours with this case:

> [T]he amended complaint asserts liability for the same types of false and misleading statements and omissions alleged in the initial pleadings, i.e., those related to earnings and performance projections and inventory matters. Moreover, each complaint alleges that the statements and omissions were disseminated through the same channels of communication, i.e., federal filings and reports to and by analysts.
>
> The amended complaint does differ from the Schaffer and the Kreuser complaints in that it is considerably more detailed than its predecessors and contains numerous specific factual allegations not previously pled. The defendants argue that the amendments, particularly where accompanied by factual allegations not previously asserted, constitute an impermissible variance from the original complaints that violates the court's prior order and the resultant agreement of the parties. See, e.g., Defendants' Memorandum at 17-18 (arguing that plaintiffs' allegations concerning the failure to write-down material amounts of inventory are based in large part on internal documents produced during discovery).
>
> The argument fails. **The court finds that the legal assertions and factual allegations in the amended complaint reflect a natural evolution from those articulated, albeit in less detail, in the initial complaints. The legal theories are essentially the same and the new factual allegations are of the same nature as those alleged earlier.** Contrary to the defendants' protestations, this degree of incorporation of factual materials gleaned from discovery as support for previously articulated legal theories, but not as the basis for distinctly new theories, is neither a "bait and switch" tactic nor the result of a discovery "fishing expedition." **The court finds that the amended complaint properly relies on the new factual allegations to amplify the causes of action identified in the initial pleadings,** and, thus, the plaintiffs have neither violated prior court order nor breached the applicable rules of civil procedure and fair practice. (Emphasis added).

Here, allegations that Dupont concealed the Costa Rican tests are simply an extension and amplification of the allegations and claims in the initial complaint. For example, ¶¶67 and 68 of the initial complaint allege that Dupont's press release regarding the Bush Ranch settlement was false and misleading because it: (a) falsely stated that there "is no evidence to support the claim that Benlate harmed crops" without disclosing the Alta tests and (b) misleadingly described the settlement as an exoneration of Dupont and its product without disclosing that Dupont fraudulently obtained its "victory". Likewise ¶60 of the amended complaint points to the same statements cited in the initial complaint and alleges that the statements were false and misleading because they failed to disclose **both** the Alta and

7

Costa Rican tests. This is just one of many instances in which the amended complaint points to the same statement cited in the first complaint and alleges that the statement was false and misleading because, in addition to concealing the Alta tests, Dupont also intentionally concealed the Costa Rican tests.

Because the Costa Rican test allegations do not create a second "new" claim, Dupont's "relation-back" and time-barred arguments are inapplicable. To require Plaintiff to continually amend his complaint for each new piece of evidence or argument that supports his claim, and to do so within a certain time limit, would create an inefficient, unnecessary process, and threaten to render further discovery moot.[3]

Second, even if the Court were to find that the Costa Rican allegations do establish a new claim, such a claim would relate back to the original pleading, pursuant to Rule 15(c)(2), which states:

> (c) RELATION BACK OF AMENDMENTS. An amendment of a pleading relates back to the date of the original pleading when
>
> * * *
>
> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.

To the extent the Costa Rican allegations create a new claim, such a claim clearly arises out of the "conduct, transaction, or occurrence set forth in the original pleading" -- i.e. that Dupont's false and misleading public statements cited in the first complaint regarding the absence of scientific evidence against it and its litigation "victories" artificially inflated the market price for Dupont's stock. See e.g. Wells v. HBO & Co., 813 F.Supp. 1561, 1566 (N.D.Ga. 1992) (Plaintiff's amended complaint arose from the same transaction as the initial complaint -- the defendants' allegedly misleading public statements -- even though the new claim was derived from a partly different course of conduct.)

---

[3] Dupont's argument is, in essence, that there is a statute of limitations which applies not only to claims but also to new evidence or arguments that support existing claims. Thus, by Dupont's logic, a newly discovered document that was not cited in the complaint is stale and inadmissable if it is more than three years old (the outside statute of limitations for a securities fraud claim), even if the document supports a claim that was properly alleged in a timely manner in Plaintiff's initial complaint.

8

Third, even if the Costa Rican allegations create a new claim that does not relate back to the initial complaint, Plaintiff has constructively amended his complaint by raising Dupont's concealment of the Costa Rican tests in various briefs since November 1996. As Rule 15(b) mandates, "[w]hen issues that were not raised in the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."[4] Here, the parties have been litigating over the Costa Rican tests since November 1996 and Dupont has conceded the issue's relevance by agreeing to produce documents regarding the Costa Rican testing issue.

Dupont also implies that it has been prejudiced because Plaintiff's counsel represented that it did not believe it needed to amend its complaint for the Costa Rican issue and thus did not intend to do so. As an initial matter, Plaintiff's counsel does not recall having made such a representation. However, even if, arguendo, the representation was made, it simply reflects counsel's view that: (a) plaintiff need not amend his complaint for each new piece of evidence or argument that support his claim[5] and (b) the issue

---

[4] See Farmland Industries, Inc. v. Morrison-Quirk Grain Corporation, 54 F.3d 478, 481 (8th Cir. 1995) ("Permitting . . . constructive amendment conserves judicial resources and is consistent with our liberal system of pleading."); Wahlstrom v. Kawasaki Heavy Industries, Ltd., 4 F.3d 1084, 1087 (2d. Cir. 1993); Walton v. Jennings Community Hosp., Inc., 875 F.2d 1317, 1320, fn 3. (7th Cir. 1989); In re Prescott, 805 F.2d 719, 725 (7th Cir.1986); Karlen v. Ray E. Friedman & Co. Commodities, 688 F.2d 1193 (8th Cir.1982) (trial judge did not err in instructing the jury on a theory that was not raised in the pleadings but which was tried and argued by the parties); Ellis v. Arkansas Louisiana Gas Co., 609 F.2d 436 (10th Cir. 1979) (the district court did not abuse its discretion in deciding the case on the basis of an issue not pleaded in the complaint where the parties had notice that issue was pertinent); Brown v. Ward, 438 F.2d 1285 (4th Cir.1970) (It was not reversible error for trial court to allow plaintiff to recover on a theory not presented in pleadings); Natl Dairymen Ass'n v. Dean Milk Co., 183 F.2d 349 (7th Cir.1950) (pleading considered amended to conform with issues tried and decided but not mentioned in complaint).

[5] It is well accepted that while a plaintiff in a fraud case must plead his claim with some specificity, he need not plead all his evidence. Quina v. Owens-Corning Fiber Glass Corp., 575 F.2d 1115, 1119 (5th Cir. 1978); Upton v. McKerrow, 887 F.Supp. 1573, 1577 (N.D.Ga. 1995).

If a plaintiff need not plead all his evidence in the first instance, he clearly need not continually amend his complaint as he obtains new evidence. Cf. Schoenberger v. Oselka, 909 F.2d 1086 (7th Cir. 1990) (Rule 11 does not impose a continuing duty to update papers that were sufficient when originally signed); Beverly Gravel, Inc. v. DiDomenico, 908 F.2d 223 (7th Cir. 1990)

9

was already a part of the case because it had been repeatedly raised and litigated since November 1996.

Dupont suggests that Plaintiff's counsel has changed its position by now including the Costa Rican allegations in the new complaint. Such is not the case. Plaintiff's counsel still believes that it need not amend its complaint for each new piece of evidence, and Plaintiff's counsel would not have amended its complaint but for the Court's July 10, 1997 Order. However, since the July 10, 1997 Order directed Plaintiff to amend the complaint to harmonize it with the Court's ruling, Plaintiff updated the complaint with further support of Plaintiff's original claims to forestall any argument by Dupont -- even though legally inaccurate -- that the failure to add the new reasons in the new complaint constituted a waiver.

**B. Defendants Have Not Been Unfairly Prejudiced By Plaintiff's Inclusion Of The Costa Rican Test Allegations In The Amended And Supplemental Complaint**

Dupont argues that it has also been unfairly prejudiced by Plaintiff's failure to amend his complaint sooner to add the Costa Rican test allegations. This argument is baseless in light of the various facts above which thoroughly rebut Dupont's suggestion that Plaintiff simply sat on his hands regarding the Costa Rican issue and sprung it on Dupont by surprise. Clearly, Plaintiff has: (a) made significant efforts since November 1996 to discover the facts regarding the Costa Rican tests and (b) repeatedly informed Dupont and the Court of plaintiff's view that the Costa Rican issue further supports the claims in the initial complaint and was, thus, already encompassed in the scope of that pleading.

Dated: August 25, 1997

Respectfully submitted,
GARWIN, BRONZAFT, GERSTEIN & FISHER

By: _____
Bruce E. Gerstein
Noah Silverman
1501 Broadway, Suite 1416
New York, NY 10036
(212) 398-0055

---

(Rule 11 does not oblige counsel to amend complaint as new evidence surfaces); Samuels v. Wilder, 906 F.2d 272 (7th Cir. 1990).

10

## CERTIFICATE OF SERVICE

I hereby certify that I served a copy of the foregoing Plaintiff's Reply Brief in Further Support of His Motion To File An Amended And Supplemental Complaint on the following individuals or entities on this 25th day of August, 1997:

**By FAX and Overnight Delivery**:

Jeremy Leathe, Esq.
**GREENBERG, TRAURIG, HOFFMAN
  LIPOFF, ROSEN & QUENTEL, P.A.**
1221 Brickell Avenue
Miami, Fl. 33131

Counsel for Defendants

Darin McAtee, Esq.
**CRAVATH, SWAINE & MOORE**
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019

Counsel for Defendants

**By First Class Mail**:

**ELWOOD S. SIMON
  & ASSOCIATES, P.C.**
Elwood S. Simon
355 South Woodward Avenue, Suite 250
Bloomfield, MI 48009
(810) 646-9730

**MILLER FAUCHER CHERTOW
  CAFFERTY and WEXLER**
Marvin Miller
30 North LaSalle St., Suite 3200
Chicago, IL  60602
(312) 782-4880
Counsel for Plaintiffs

**BURT & PUCILLO**
Oliver Burt
Esperante, Suite 960
222 Lakeview Avenue,
West Palm Beach, Florida, 33401
(407) 835-9400.

_____
Noah H. Silverman

# ADDITIONAL ATTACHMENTS NOT SCANNED

PLEASE REFER TO COURT FILE